805 So.2d 1247 (2002)
STATE of Louisiana
v.
Lawrence HOWARD.
No. 2000-KA-2700.
Court of Appeal of Louisiana, Fourth Circuit.
January 23, 2002.
Rehearing Denied February 15, 2002.
*1251 Harry F. Connick, District Attorney, Donna R. Andrieu, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judges MIRIAM G. WALTZER, MICHAEL E. KIRBY and DAVID S. GORBATY.
MICHAEL E. KIRBY, Judge.

STATEMENT OF CASE
On July 2, 1997, the defendant, Lawrence Howard, was charged by bill of information with possession of cocaine with the intent to distribute in violation of La. R.S. 40:967. The defendant entered a plea of not guilty at his arraignment on July 15, 1997. Discovery and suppression hearings were held on July 30, 1997 and August 7, 1997. The trial court denied the defendant's motion to suppress evidence and found probable cause. The defendant elected a judge trial on January 29, 1998. After taking the matter under advisement, the trial court found the defendant guilty as charged on February 13, 1998. The State filed a multiple bill of information on March 20, 1998, and the defendant pled not guilty to the multiple bill. The State amended the multiple bill on April 17, 1998, and the defendant pled not guilty to the amended bill. On May 4, 1998, the defendant filed a written objection to the multiple bill. The trial court denied the defendant's motion for new trial on May 25, 1999. At sentencing on October 6, 1999, the trial court sentenced the defendant to serve fifteen years at hard labor.
The defendant alleged in his brief that he had not been adjudicated a multiple offender on October 6, 1999, although he was allegedly sentenced under the multiple offender statute. This Court issued orders to the district court on January 23, 2001, March 29, 2001, May 21, 2001, and July 13, 2001, to "determine on what date the defendant was adjudicated a multiple offender and ordered the record corrected to reflect that proceeding and take all steps necessary to have the transcript of the multiple offender adjudication forwarded to this Court." On September 14, 2001, the trial court conducted a multiple bill hearing. The defendant was adjudicated a second felony offender and sentenced to seventeen years at hard labor.

STATEMENT OF FACT
Officer Dennis Bush testified that on the afternoon of March 25, 1997, he was conducting a surveillance of the 1900 block of St. Ann Street when he observed the defendant engage in a narcotics transaction. The officer then saw the defendant put a package in a gray Oldsmobile parked at the intersection of Roman and St. Ann Streets. The officer confiscated the package and found it to contain four rocks of crack cocaine. Detective Nelson found two hundred twenty-five dollars on the defendant. LeKeisha Green attempted to approach the defendant's vehicle. The officer told her to step back. The officer stated that he knew Leroy Toca, but Leroy Toca was not at the scene.
Officer Russell Nelson was on patrol with Officer Bush when they observed the defendant engage in a narcotics transaction. The defendant placed a package in a gray Oldsmobile after the transaction. The officers confiscated the package and found it to contain four rocks of crack cocaine. Upon searching the defendant, Officer Nelson found two hundred twenty-five dollars in U.S. currency. Officer Nelson also stated that he knew Leroy Toca. Toca lived at 1833 St. Ann Street. The officer testified that Toca came out of his *1252 residence while the officers were investigating the defendant. The officer stated that he did not recall seeing anyone playing football or a woman asking for the defendant's car keys.
LeKeisha Green testified that she resided at 1732 St. Ann Street. She was present when the defendant was arrested. The witness stated that she, the defendant, Leroy, Corey and Diane Jones were standing on the corner talking. The defendant, Leroy and Corey were throwing a football. She did not see the defendant take any money from anyone. When the police arrived, they told her to step across the street. The police put the defendant on the police vehicle and "checked" him. The officers put Corey against the wall and patted him down. The officers then let Corey go. The witness identified the three officers as "Dennis", "Arthur" and "Duke." The witness stated that she did not see the officers go into the defendant's car or take anything out of the vehicle. She asked Officer Bush for the car keys and he told her "not right now." The witness further testified that she had seen the same officers arrest Leroy Toca on previous occasions. She stated that the officers did not arrest Leroy on the day in question. She indicated that she had never seen any of the guys sell drugs.
Detective Arthur Powell testified that he was not present when the defendant was arrested. The officer stated that he knew LeKeisha Green from the neighborhood. The officer acknowledged that he used to patrol the neighborhood with Officers Bush and Nelson.
Lawrence Howard testified that he was employed as a welder at Avondale Shipyards. On March 25, 1997, he was on Easter vacation. He was playing football with Leroy, Corey and Corey's little brother that afternoon. LeKeisha Green and Diane Jones were also outside. The defendant denied possessing and selling cocaine. When the officers arrived on the scene, they put him against a wall and told him that they were going to arrest him for loitering. The officers did not go to his car until after LeKeisha asked the officers for the defendant's car keys. The defendant denied having cocaine in his car. He stated that he did not use cocaine. The defendant acknowledged a prior conviction for accessory after the fact to second degree murder. The defendant testified that Leroy Toca is his cousin. He stated that he knew Leroy sold drugs. The defendant also testified that Arthur Powell was one of the officers on the scene. He further stated that Leroy was also arrested that day. The defendant stated that Leroy was in his house when the officers arrived on the scene but came outside as the officers were arresting him.
Corey Lewis testified that he was on the scene when the defendant was arrested. He stated that the police officers drove the neighborhood once before they stopped and arrested the defendant. The defendant was using a pay telephone the first time the officer drove through the neighborhood. The witness and his brother, Adonise Reth, were throwing a football. The second time the officers drove past, the defendant, the witness and Reth were playing football. The police officers got out of their vehicle and handcuffed all three of them. The officers put the defendant in the police car. LeKeisha Green asked the officers for the defendant's car keys. The officers involved were Powell, Nelson and Bush. When LeKeisha asked the officers for the car keys, one of the officers went to the defendant's car. The witness stated that he heard the officer say that he did not find anything in the car. The witness further testified that the defendant did not possess or sell cocaine that day. The witness also indicated that *1253 Leroy Toca had been outside for a while but then went inside his residence. Leroy came back outside after the officers arrested the defendant. The witness stated that he knew Leroy Toca had been arrested on prior occasions.
Adonise Reth testified that he, his brother, Corey Lewis, and the defendant were playing football when the police officers arrived on the scene. The officers stated that the defendant was going to be arrested for loitering. The witness further testified that the defendant did not sell cocaine that day.
Leroy Toca testified that he has two convictions for possession of cocaine with the intent to distribute. He stated that Officers Bush, Nelson and Powell were on the scene when the defendant was arrested. Powell drove up while Bush and Nelson were detaining the defendant. Powell asked if everything was okay and then left. The witness stated that he had been outside earlier in the afternoon playing football with the defendant, Corey and Adonise. He then went inside his residence. The witness stated he came out of his house while the officers were arresting the defendant. The officers told the witness to go back inside. The witness stated that he did not put anything in the defendant's car, nor did he see anyone else put anything in the defendant's vehicle.

ERRORS PATENT
A review of the record reveals that sentence imposed by the trial court is illegally excessive. After adjudicating the defendant to be a second felony offender, the trial court sentenced the defendant to seventeen years at hard labor and stated that the sentence was to be served "without benefit." However, La. R.S. 40:967 and La. R.S. 15:529.1 provides that only the first five years of the sentence is to be served without benefit of parole. Therefore, the defendant's sentence must be amended to provide that only the first five years of the defendant's sentence is to be served without benefit of parole.

DISCUSSION[1]

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant contends that he is entitled to immediate discharge to due the trial court's delay in the imposition of sentence.
La.C.Cr.P. article 874 provides that "[s]entence shall be imposed without unreasonable delay. If a defendant claims that the sentence has been unreasonably delayed, he may invoke the supervisory jurisdiction of the appellate court." The sanction for noncompliance is divestiture of the trial court's sentencing jurisdiction. State v. McQueen, 308 So.2d 752 (La.1975). In determining whether the delay is unreasonable or prejudicial, the appellate court adopts a flexible approach in which all the circumstances are evaluated on a case by case basis. City of Baton Rouge v. Bourgeois, 380 So.2d 63 (La.1980); State v. Milson, 458 So.2d 1037 (La.App. 3 Cir. 1984).
In Milson, the defendant pleaded guilty to manslaughter on August 13, 1979. The trial court deferred sentencing, ordered a presentence investigation report, and released defendant on bond. No further action was taken until January 17, 1984, whereupon the trial judge sentenced defendant to serve ten years at hard labor. On appeal this court held that the four and one-half year delay in sentencing was without good cause. The court noted that the *1254 record was void of any evidence that defendant was ever notified of a sentencing date earlier than January 17, 1984, or that defendant concealed his whereabouts from the trial court or the state.
Similarly, in State v. Davis, 542 So.2d 856 (La.App. 3 Cir.1989), the court ruled that the trial court erred in sentencing the defendant after a lapse of three years and nine months since the conviction. In a brief opinion, the court noted that the delay was unreasonable and the record did not reflect any factors which would justify such a delay. In both Milson and Davis, the Third Circuit vacated the defendants' sentences and ordered the defendants discharged.
However, in State v. Johnson, 363 So.2d 458, 461 (La.1978), the Louisiana Supreme Court held that the defendant was not prejudiced by a delay of seven years between the defendant's conviction and sentence. The defendant argued that his right to a speedy trial had been violated, and the Supreme Court held that the right to a speedy trial does not encompass sentencing. The court then stated that under La.C.Cr.P. art. 874 the defendant was "entitled to imposition of sentence `without unreasonable delay'." The court declined to determine the reasonableness of the delay, but declared, "we hold that the defendant is not entitled to have his conviction and sentence set aside, since he sustained no prejudice by the delay in its imposition."
Likewise, in State v. Dorsey, 95-1084 (La.App. 3 Cir. 3/20/96), 672 So.2d 188, the Third Circuit held that a four year delay between conviction and sentence was not prejudicial. In Dorsey, the defendant pled guilty to issuing worthless checks in 1991 and was sentenced in 1995 to serve six years at hard labor. On appeal, the defendant argued that the delay in sentencing was unreasonable and illegal. During the four-year interval between conviction and sentencing, the defendant had been first released on bond to make restitution and then twice incarcerated on unrelated matters. On appeal, the Third Circuit affirmed the defendant's sentence on the basis that some of the delays were caused by the defendant and also because no prejudice to the defendant could be shown by the delay.
This Court, in State v. Stewart, 98-0346 (La.App. 4 Cir. 3/10/99), 732 So.2d 74 concluded that the defendant was not prejudiced by a delay of three years and four months between his conviction and resentencing. In Stewart, the defendant was originally sentenced eighteen days after his conviction to life imprisonment. After his convictions were affirmed and his sentence vacated, three years and four months passed before the defendant was resentenced. This court noted that "even though none of the delay can be attributed to the defendant, no prejudice can be found because he could not have expected a less severe sentence. Like the defendant in State v. Dorsey, he cannot not [sic] show that he suffered any prejudice by the delay in sentencing." Stewart, 732 So.2d at 76.
In the present case, the defendant was convicted on February 13, 1998. The State subsequently filed a multiple bill of information to which the defendant pled not guilty on March 20, 1998. The State amended the bill and the defendant pled not guilty to the amended bill on April 17, 1998. Believing a multiple bill hearing had been held, the trial court sentenced the defendant under the multiple bill to fifteen years at hard labor on October 6, 1999. After the matter was lodged on appeal in this Court, it was determined that a multiple bill hearing had not been held. On January 13, 2001, this Court remanded the case to the trial court for correction and *1255 supplementation of the record. The trial court conducted a hearing on April 10, 2001 at which the trial judge agreed to recuse herself. However, the recusal order was never signed and nothing more was done in the matter until September 13, 2001. On that date, O.I.D.P. was appointed to represent the defendant and a multiple offender hearing was conducted. The defendant was adjudicated a second felony offender and sentenced to seventeen years at hard labor without benefit of parole.
The record indicates that the defendant was not responsible for the delay in sentencing. The trial court believed that a multiple hearing had been conducted when it sentenced the defendant on October 6, 1999. When the case was docketed for appeal, it was determined that a multiple bill hearing had not occurred. The trial court was then ordered to conduct a hearing and sentence the defendant. The delays in sentencing occurred solely through the acts and omissions of the trial court. The record is devoid of any factors or circumstances which would justify the delay in sentencing. However, there is no evidence that the defendant was prejudiced by the delay in sentencing. The defendant was convicted of possession with the intent to distribute cocaine. The minimum sentence under La. R.S. 40:967 at the time of the defendant's conviction was five years at hard labor without benefit of probation, parole or suspension of sentence for the first five years. The minimum sentence for a second offender under La. R.S. 40:967 and 15:529.1 fifteen years at hard labor with the first five years without the benefit of parole, which was the sentence imposed by the trial court in October of 1999. Thus, the defendant in the present case, like the defendant in Stewart, knew that he could not have expected a less severe sentence upon resentencing.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2
In this assignment, the defendant contends that the trial court erred when it denied defendant's motion to continue the multiple bill and sentencing hearing, resulting in defendant receiving ineffective assistance of counsel.
A motion for continuance shall be in writing and shall be filed at least seven days prior to the commencement of trial. La.C.Cr.P. art. 707. However, where occurrences that allegedly make the continuance necessary arise unexpectedly, and defendant has no opportunity to prepare a written motion, an oral motion may be sufficient. State v. Davis, 485 So.2d 981, 984 (La.App. 4 Cir.1986). A timely motion for continuance may be granted, in the discretion of the trial court, if there is good ground therefore. La.C.Cr.P. art. 712. Upon written motion filed at any time, a court may grant a continuance, but only upon a showing that such motion is in the interest of justice. La.C.Cr.P. art. 707.
In State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832, the court stated:
As a general matter, the decision to grant or deny a motion for continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb a trial court's determination absent a clear abuse of discretion. La. C.Cr.P. art. 712; State v. Strickland, 94-0025, p. 23 (La.11/1/96), 683 So.2d 218, 229; State v. Bourque, 622 So.2d 198, 224 (La.1993), overruled on other grounds by State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16. Whether a refusal to grant a continuance was justified depends on the circumstances of the particular case presented. State v. Bourque, 622 So.2d at 224; State v. *1256 Simpson, 403 So.2d 1214, 1216 (La. 1981). Generally, this court declines to reverse convictions for improper denial of a motion to continue absent a showing of specific prejudice. State v. Strickland, 94-0025 at p. 23, 683 So.2d at 229; State v. Gaskin, 412 So.2d 1007, 1011 (La.1982).
98-1078 at p. 2, 750 So.2d at 849.
Where the motion for continuance is based on inadequate time for counsel to prepare, only where the preparation time was so minimal as to call into question the basic fairness of the proceeding will an appellate court question the trial court's denial of the motion. See State v. Ross, 97-0357, p. 4 (La.App. 4 Cir. 12/10/97), 704 So.2d 920, 922.
In State v. Simpson, 403 So.2d 1214 (La.1981), the Louisiana Supreme Court found that the trial court abused its discretion in denying the defendant's motion for continuance filed orally immediately before trial. Defense counsel in that case was a member of the Office of the Public Defender and was unaware that he was representing the defendant until the morning of trial. Defense counsel had no time to prepare for trial, as the Office of the Public Defender did not receive notice that the defendant's case was set for trial. The defendant was told that a trial date had been set but he did not communicate with his attorney. The court found that, although generally the defendant must show specific prejudice arising from the trial court's denial of a motion for a continuance, in that case, "defendant's right to a fair trial was substantially affected by being forced to go to trial with counsel who had no time to prepare a defense through no fault of his own." State v. Simpson, at 1216. The court reversed the defendant's conviction without a discussion of whether the defendant showed specific prejudice.
In State v. Winston, 327 So.2d 380 (La. 1976), the Louisiana Supreme Court found that the trial court abused its discretion in denying a motion for a continuance where defense counsel had only three days to prepare for trial. In that case, the court distinguished cases where counsel had a longer period of time to prepare for trial, and reasoned that the difficulty in preparing for trial where the crime occurred many months before trial must be considered when determining adequate time for trial preparation.
In State v. Holmes, 590 So.2d 834 (La. App. 4 Cir.1991), the defendant was forced to trial only several minutes after the preliminary hearing concluded. The defense counsel argued that he was unprepared for trial, given the short period of time between the preliminary hearing and trial. However, the trial date in that case was set sixty days in advance, and this court found that counsel's lack of adequate preparation for trial was due to his own neglect, not because the trial court denial of the motion for a continuance.
In State v. Knight, 611 So.2d 1381 (La. 1993), the defendant had been represented by the attorney from the indigent defender's office who handled most of the cases for that particular section of criminal court. On the day of trial, that attorney was on vacation; and, another attorney from the indigent defender's office was in court to cover the vacationing attorney's docket for that day. The trial court refused to grant a continuance even though the second attorney knew nothing about the defendant's case. The trial court denied the motion of defense counsel for an instanter subpoena for one of the arresting officers. Defense counsel presented no defense but cross-examined the State's witnesses. The Supreme Court reversed the defendant's conviction because the trial *1257 court constructively denied counsel to the defendant. The court stated:
Although formal appointment of counsel does not satisfy the constitutional guarantee, a short period of time is sometimes sufficient for trial preparation. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). Prejudice to a defendant may be presumed when counsel fails to subject the state's case to a meaningful adversary test. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
Three days, including a Saturday and Sunday, have been held inadequate for Louisiana trial preparation. State v. Winston, 327 So.2d 380 (La.1976). A general appointment of the Public Defender's Office does not justify designating an unprepared attorney from that office on the morning of trial. State v. Simpson, 403 So.2d 1214 (La.1981).
Id. at 1383.
The court further stated that there was no significant difference between what happened in Knight and the complete absence of counsel, and that the complete absence of counsel was a structural trial defect not subject to the harmless error analysis.
In State v. Addison, 94-2745 (La.6/23/95), 657 So.2d 974, the defendant had been represented by various attorneys from the public defender's office; and, on the morning of trial, the attorney who had represented the defendant only at a bail reduction hearing appeared and moved for a continuance. The trial court denied the continuance and noted that public defenders kept pulling in and out of the case. The court of appeal refused to consider the denial of the continuance on the grounds that the attorney failed to state specific grounds for the continuance. The Supreme Court granted certiorari to consider the issue of whether the trial judge vented her frustration with the public defender's office by forcing the defendant to trial despite the last minute substitution of an attorney who was not familiar with the case. In a per curiam decision, the court found that the record did not establish ineffective assistance and prejudice; but, the court further found that a showing by the defendant at a subsequent hearing that his new attorney was totally unprepared might entitle him to a new trial. The court concluded that it was appropriate to affirm the conviction conditionally and to remand for a hearing, in the nature of a hearing on a motion for new trial, to determine whether the defendant received effective assistance of counsel, and if not, to determine whether he suffered prejudice from such failure.
In State v. Ross, supra, the defendant was being tried for attempted murder and attempted armed robbery. A new defense attorney was appointed on the morning of trial, and defendant objected that new defense counsel was not familiar with his case. New defense counsel had discussed the case with previous counsel and, during a recess, read a pretrial transcript and discussed the matter with the defendant. Defense counsel felt he was prepared to proceed with the case, and the defendant said he would proceed if he had no choice. On appeal, this court found that the preparation time was not so minimal as to call into question the basic fairness of the proceeding, especially considering that defense counsel said he did not need any more time.
In the present case, O.I.D.P. was appointed to represent the defendant the same day of the multiple bill hearing. Defendant had retained Dwight Doskey to represent him at trial but did not want Mr. Doskey to represent him at the multiple offender hearing. The trial court sought to have defendant's appellate counsel represent *1258 defendant at the hearing but was informed that appellate counsel could not do so. The trial court then informed the O.I.D.P. attorney assigned to that section of court that he would be representing the defendant. The O.I.D.P. attorney sought a continuance which the trial court denied. The trial court then ordered the multiple bill hearing to begin thirty minutes later. Clearly, the trial court erred in denying the motion for continuance. The O.I.D.P. attorney had not been appointed to represent the defendant until the morning of the multiple bill hearing. He had no knowledge of the defendant's present conviction and prior criminal history. He stated that he had not had an opportunity to review the record or converse with the defendant.
The appellant claims that the denial of the continuance resulted in ineffective assistance of counsel. Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986).
A defendant's claim of ineffective assistance of counsel is to be assessed by the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
In the case at bar, the O.I.D.P. attorney was appointed to represent the defendant the morning of the multiple bill hearing. Although there was a motion to quash the multiple bill filed in the record, the attorney did not argue the motion to the court. The attorney did not object to any of the documentation presented by the state or cross-examine the State's fingerprint expert witness. The attorney informed the trial court that he was completely unfamiliar with the case and needed time to prepare. It is clear that the trial court's denial of the motion for continuance denied defendant effective assistance of counsel at the multiple bill hearing.
This assignment of error has merit.

ASSIGNMENT OF ERROR NUMBER 3
The defendant further argues that the trial court applied the wrong burden of proof and erred in finding the defendant to be a second felony offender. The defendant suggests that the State did not produce sufficient evidence to prove that he was a second felony offender.
*1259 In 1993, the Louisiana Legislature enacted La. R.S. 15:529.1(D)(1)(b) to establish "the procedure to be followed to attack the validity of a prior conviction" and "to set forth burdens of proof." 1993 La. Acts 1993, No. 896. La. R.S. 15:529.1(D)(1)(b) provides as follows:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
To prove that a defendant is a multiple offender, the state must establish by competent evidence that there is a prior felony and that the defendant is the same person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092 (La.1982); State v. Raymond, 97-81 (La. App. 5 Cir. 5/28/97), 695 So.2d 1039, 1044. Where the prior conviction resulted from a plea of guilty, the state must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to this plea of guilty, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). State v. Jones, 517 So.2d 402 (La.App. 5 Cir.1987).
The Louisiana Supreme Court adopted a scheme for burdens of proof in habitual offender proceedings in State v. Shelton, 621 So.2d 769 (La.1993). This scheme was succinctly summarized in State v. Conrad, 94-232 (La.App. 5 Cir. 11/16/94), 646 So.2d 1062, 1064, as follows:
If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a `perfect' transcript of the Boykin colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an `imperfect' transcript. If anything less than a `perfect' transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary.
The supporting documentation concerning the defendant's prior conviction are not included in the appeal record. This Court requested the multiple bill exhibits from the district court, but they were not provided to the Court. As the multiple bill of information and the certified copies of the convictions are not available, it is not possible to determine the merits of the defendant's *1260 assignment of error and whether the State met its burden of proof at the multiple bill hearing. Therefore, the defendant's adjudication and sentence under the multiple offender statute should be vacated. La. Const. art. I, § 19 (1974); State v. Ford, 338 So.2d 107 (La.1976).
This assignment has merit.

ASSIGNMENTS OF ERROR NUMBER 4 AND 9
The defendant alleges that the trial court erred in increasing the sentence imposed after remand and imposed an unconstitutionally excessive sentence.
However, as the defendant failed to file a motion to reconsider sentence or orally object to the sentence, he has not preserved this issue for review on appeal See La.C.Cr.P. article 881.1.

ASSIGNMENT OF ERROR NUMBER 6
The defendant further argues that the trial court erred in denying the defendant's motion for new trial.
La.C.Cr.P. article 851 provides that a motion for new trial should be granted when "[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at trial it would probably have changed the verdict or judgment of guilty." The trial judge's denial of a motion for new trial will not be disturbed on appeal absent a clear abuse of his great discretion. State v. Williams, 580 So.2d 497 (La.App. 4 Cir.1991).
The defendant claims he was entitled to a new trial because the state failed to provide him with information concerning one of the police officers who testified at trial. The defendant contends that at the time of trial Officer Russell Nelson was under investigation by federal authorities for extortion and eventually pled guilty in federal court to extortion.
The due process clause of the Fourteenth Amendment to the United States Constitution requires the disclosure upon request of evidence which is favorable to the accused when the evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Brady rule is based on due process of law. "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to the defendant which is material to guilt or punishment." State v. Rosiere, 488 So.2d 965, 970 (La.1986). The test for determining materiality was established in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. The test for determining materiality is the same whether or not the defense makes a pretrial request for exculpatory evidence. Id.
In the present matter, Officer Russell Nelson did not plead guilty in federal court to the charge of extortion until after defendant's trial. La. C.E. article 609.1 provides that a witness' credibility may be impeached with evidence of his or *1261 her convictions. Evidence of a person's arrests or criminal investigations are not admissible to attack a person's credibility. Therefore, even if the State knew of the pending investigation, such information was not Brady information to which the defendant was entitled.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 8
The defendant also contends that the State failed to produce sufficient evidence to support his conviction for possession with the intent to distribute cocaine.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La. 1987).
In the present case, the defendant was convicted of possession of cocaine with intent to distribute which requires that the state prove that he "knowingly" and "intentionally" possessed cocaine with the "intent to distribute". State v. Williams, 594 So.2d 476, 478 (La. App. 4 Cir.1992). Specific intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to a reasonable inference of intent to distribute. State v. Dickerson, 538 So.2d 1063 (La.App. 4 Cir. 1989). In State v. Hearold, 603 So.2d 731 (La.1992), the Louisiana Supreme Court set forth five factors to consider in determining whether a party had the intent to distribute narcotics. Reversing the defendant's conviction in that case, the court stated:
Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred. *1262 State v. Fuller, 414 So.2d 306 (La.1982); State v. Phillips, 412 So.2d 1061 (La.1982); La.Rev.Stat. 15:445. In State v. House, 325 So.2d 222 (La.1975), this court discussed certain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
* * *
In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. State v. Greenway, 422 So.2d 1146 (La. 1982); State v. Harveston, 389 So.2d 63 (La.1980); State v. Willis, 325 So.2d 227 (La.1975).
Id. at pps. 735-736.
In State v. Cushenberry, 94-1206, p. 6, (La.App. 4th Cir.1/31/95), 650 So.2d 783, 786, this court described the Hearold factors as "useful" but held that the evidence need not "fall squarely within the factors enunciated to be sufficient for the jury to find that the requisite intent to distribute."
In the case at bar, the police officers testified that they observed the defendant engage in a narcotics transaction. They stated they watched as the defendant took currency from someone and gave that person a small white object. The officers further stated that they observed the defendant place a plastic bag in his vehicle. The officers then detained the defendant and located additional rocks of cocaine in his vehicle. United States currency in the amount of two hundred twenty-five dollars was found on the defendant's person. The testimony of the officers that they observed the defendant engage in a narcotics transaction and the discovery of additional rocks of cocaine in the defendant's vehicle and two hundred twenty-five dollars on the defendant's person were sufficient evidence for the jury to conclude that the defendant was guilty of possession with the intent to distribute cocaine. The jury was within its discretion in choosing to accept the testimony of the police officers over the testimony of defendant's witnesses.
This assignment of error is without merit.

CONCLUSION
Accordingly, for the above reasons the defendant's conviction is affirmed. His adjudication and sentence under the multiple bill is reversed and the matter is remanded for further proceedings not inconsistent with the views expressed herein.
CONVICTION AFFIRMED; MULTIPLE OFFENDER ADJUDICATION REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Upon receipt of supplemental transcripts, the defendant has withdrawn assignments of error number five and seven.